[No. G031028. Fourth Dist., Div. Three. Sept. 23, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CECELIO GUTIERREZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976(b), the introductory paragraph, facts, part I, and the dispositional paragraph are ordered published in the Official Reports.

COUNSEL

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Douglas C.S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**IKOLA, J.**—Defendant Cecelio Gutierrez was convicted by jury of attempted murder and two counts of assault with a firearm. The jury also found true two allegations of personally using a firearm. In addition, defendant admitted a probation violation.

Defendant contends: the court committed prejudicial error when it failed to instruct the jury on attempted voluntary manslaughter; his conviction for assault with a firearm was not supported by substantial evidence; he received ineffective assistance of counsel; and the abstract of judgment should be corrected to reflect a probation violation instead of a drug offense. None of defendant's contentions have merit. Accordingly, the judgment is affirmed.

## FACTS

Defendant, along with his nephew, Emiliano Perez (Perez), and a friend, Jorge Castillo (Castillo), went bar hopping during the late evening hours of August 16, 2001. In the course of the evening, they were thrown out of three Anaheim bars for annoying patrons, using false identification to obtain drinks, and for starting fights. During their series of misadventures, defendant shot a bar patron in the shoulder, and, not long thereafter, went to a local gas station and pointed a loaded gun at an innocent bystander.

*The Off Limits Bar (Uncharged Offense)*

Defendant, Castillo, and Perez began their evening at the Off Limits Bar in Anaheim. After annoying a female patron, they headed over to the bar area. When asked for identification, they attempted to use one set of identification by passing it around under the table. The bartender told them to leave. As they were leaving, Perez punched a patron, and the three men ran to their car.

Another patron ran out of the bar and began to yell at them. Perez, who was sitting in the back seat of the car, pulled out a gun, looked the patron in the eye, and pointed the gun at him. The patron took evasive action, and saw Perez hand the gun to the defendant who was sitting in the front passenger seat. As the car was pulling out of the parking lot, it almost hit the patron. The car stopped when it reached the street, and defendant extended his arm outside the window and pointed the gun at the assembled crowd of spectators. The spectators dropped to the ground when they saw the weapon in defendant's hand. The car left, and about 10 to 15 seconds later, two shots were heard.

*Sugar's Bar (Charged Offense)*

About 40 minutes later, defendant and his two cohorts arrived at Sugar's Bar in Anaheim. The owner yelled at them when they walked in carrying their own drinks. As the confrontation escalated, the owner picked up Perez and pushed him towards the door. Two customers, one of them being victim Geoffrey Anderegg (Anderegg), helped the owner remove the three men from the bar. After leaving the bar, Perez and Castillo got into the car while defendant stood in the parking lot with a gun. Defendant initially fired two shots that created a lot of smoke. As Anderegg walked back towards the front door of the bar, he saw the smoke and said, "It's fake." Defendant responded by firing a shot into Anderegg's left shoulder area. Anderegg was treated and released at UCI Medical Center for a flesh wound.

*The Mobil Gas Station (Charged Offense)*

Shortly after the incident at Sugar's Bar, as defendant and his two companions were passing a Mobil gas station in Anaheim, defendant pointed a gun at Britz Alberto, Jr., a motorist who was in the process of leaving the gas station. Alberto followed defendant's vehicle to get a license plate number, and saw defendant fire a shot into the window of a white Honda Accord that was parked on the side of the road.

After the gas station incident, the three men traveled to Cuban Pete's Bar in Anaheim, where they were involved in another altercation. Shortly after

this incident, the police arrested defendant, Castillo, and Perez. Their vehicle was searched, and a small caliber revolver with one live round in the cylinder was recovered from beneath the passenger seat. The police also found bullet casings inside the gun that indicated it had been fired.

## DISCUSSION

## I

*The Trial Court Had No Sua Sponte Duty to Instruct the Jury on Attempted Voluntary Manslaughter*

Defendant argues the court committed prejudicial error when it failed, sua sponte, to instruct the jury on the lesser included offense of attempted voluntary manslaughter. We disagree.

The duty to instruct on lesser included offenses is well established. " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.] The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to it being given. [Citations.] Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154–155 [77 Cal.Rptr.2d 870, 960 P.2d 1094].)

Voluntary manslaughter is a lesser included offense of murder when the requisite mental element of malice is negated by a sudden quarrel or heat of passion, or by an unreasonable but good faith belief in the necessity of self-defense. "Only these circumstances negate malice when a defendant intends to kill." (*People v. Lee* (1999) 20 Cal.4th 47, 59 [82 Cal.Rptr.2d 625, 971 P.2d 1001].) Here, self-defense, imperfect or otherwise, is not argued. To establish voluntary manslaughter under a heat of passion theory, both provocation and heat of passion must be found. (*Id.* at p. 60.) "First, the provocation which incites the killer to act in the heat of passion case must be

caused by the victim or reasonably believed by the accused to have been engaged in by the decedent. [Citations.] Second, . . . the provocation must be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*People v. Lujan* (2001) 92 Cal.App.4th 1389,1411–1412 [112 Cal.Rptr.2d 769].)

■ When relying on heat of passion as a partial defense to the crime of *attempted* murder, both provocation and heat of passion must be demonstrated. (*People v. Williams* (1988) 199 Cal.App.3d 469, 475 [245 Cal.Rptr. 61].) We agree with the Attorney General that evidence of provocation or heat of passion is not present in this case, and there is nothing in the record " 'substantial enough to merit consideration' by the jury of the lesser included offense of attempted voluntary manslaughter under a theory of sudden quarrel or heat of passion. . . ." (*Ibid.*) Not only was defendant's state of mind never argued by the defense, but the evidence failed to demonstrate any indicia of provocation. During closing argument, counsel argued defendant was not the shooter, and unlike Perez, who was thrown out of the bar by the owner, had no motive to shoot anyone.[1] ■ Generally, when a defendant completely denies complicity in the charged crime, there is no error in failing to instruct on a lesser included offense. (See *People v. Medina* (1978) 78 Cal.App.3d 1000, 1005–1006 [144 Cal.Rptr. 581] [no duty to instruct on voluntary manslaughter based on diminished capacity when defendant testified he was not present when victim was shot].) Although defendant did not testify, there is no evidence in the record remotely suggesting any objectively reasonable provocation. Thus, there was no basis to instruct on the lesser included offense of attempted voluntary manslaughter based on a theory of heat of passion or sudden quarrel because the evidence did not support giving the instruction.

Relying on *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666], and on *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675], defendant also argues the court had a sua sponte duty to instruct the jury on attempted voluntary manslaughter on the theory defendant may have acted with a conscious disregard for life, but without intent to kill. Defendant's argument is misplaced because the lesser included offense was *attempted* voluntary manslaughter and not voluntary manslaughter.

■ *People v. Lasko, supra,* 23 Cal.4th at page 110, held that intent to kill is not a necessary element of voluntary manslaughter. Thus, a killer who, acting

---

[1] *People v. Breverman, supra,* 19 Cal.4th at pages 154–155, held the court's sua sponte duty arises regardless of defendant's theory of the case. Here, counsel specifically stated an instruction on attempted voluntary manslaughter was not required as "the state of the evidence is either he's the shooter or he's not the shooter." That appears to be an accurate assessment of the record.

with conscious disregard for life and knowing that the conduct endangers the life of another, unintentionally but unlawfully kills in a sudden quarrel or heat of passion is guilty of voluntary manslaughter. *People v. Blakeley, supra,* 23 Cal.4th at page 85 held voluntary manslaughter is also committed when a defendant, "acting with conscious disregard for life and the knowledge that the conduct is life-endangering, unintentionally but unlawfully kills while having an unreasonable but good faith belief in the need to act in self-defense."

In relying on these cases as authority for an attempted voluntary manslaughter instruction based on conscious disregard, defendant misses a fundamental point. ■ An *attempt* to commit a crime requires a specific intent to commit the crime. (Pen. Code, § 21a.) This is true "even though the crime attempted does not [require a specific intent].)" (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 53.) Thus, for example, it has been the rule for more than a century "that implied malice cannot support a conviction of an *attempt* to commit murder." (*People v. Bland* (2002) 28 Cal.4th 313, 327 [121 Cal.Rptr.2d 546, 48 P.3d 1107].)

■ Similarly, attempted voluntary manslaughter cannot be premised on the theory defendant acted with conscious disregard for life, because it would be based on the "internally contradictory premise" that one can intend to commit a reckless killing. (See *People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332 [59 Cal.Rptr.2d 798] [holding there is no crime of attempted involuntary manslaughter because the essential premise is a "manifest impossibility"].) Since implied malice cannot support conviction of an attempt to commit murder (*People v. Bland, supra,* 28 Cal.4th at p. 327), it would turn logic on its head to allow implied malice to support conviction of attempted voluntary manslaughter. Thus, the court had no sua sponte duty in this case to instruct on attempted voluntary manslaughter.

II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Bedsworth, Acting P. J., and Fybel, J., concurred.

On October 10, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 14, 2004.

---

[*]See footnote, *ante,* page 704.